STATE, Plaintiff, vs. STETSON, Defendant.

*January 17—February 10, 1931.*

*Spencer Haven* of Hudson, counsel for the Board of State Bar Commissioners, for the plaintiff.

No appearance for the defendant.

NELSON, J. The complaint in substance charges that the defendant committed perjury in the county court of Milwaukee county on October 18, 1928, at the hearing duly held on the application to admit to probate the will of Bertha Dallman, deceased; that he petitioned the county court of Milwaukee county to admit the said alleged will to probate knowing the same to be a false, forged, and fraudulent document, and that he sought to have said will admitted to probate by his own false, perjured, and corrupt testimony.

The facts as found by the referee are substantially as follows: The defendant is thirty-nine years old. He came to the United States when he was seventeen, received an education equivalent to four years in high school, attended a university night school for three and a half years, and was admitted to the bar August 10, 1921. From 1917 to 1921 he was a clerk in the office of Raymond J. Cannon, a Milwaukee attorney, except that during seven months of that period he was in the military service. In 1926 he was admitted to the bar in the state of Minnesota and for a time practiced in Duluth and also in Minneapolis.

Prior to October 24, 1927, Bertha Dallman, an aged and infirm woman, was found in her room in the city of Milwaukee in an unconscious state resulting from inhaling coal gas. She was taken from her home to an adjoining house owned by her which was in part occupied by Fred Schultz and his wife. She continued to reside there until January 17, 1928, when she died. On October 24, 1927, the defendant

was requested by Mae Schultz, wife of Fred Schultz, to come to her home and prepare a will for a woman residing there. The defendant went to the Schultz home on that afternoon and was told by Fred Schultz that Mrs. Dallman wished to dispose of her property by will in the manner detailed by Schultz. The defendant made some memoranda, returned to his office, prepared a will, and took it to the Schultz home that same evening. He there conferred with Mr. Schultz for a time and then left taking the document with him. He again visited the Schultz home on the following day and left the will with Mr. Schultz. The latter afterwards wrote the names and addresses of Walter Zass and Leo Hille on the will as witnesses. Then a day or two thereafter Margaret Puljer visited the Schultz home and was requested by Mrs. Schultz to write the name of Bertha Dallman on the will in three different places where the defendant had indicated by V-shaped check marks where the name should be written. Mrs. Puljer signed Bertha Dallman's name in the three different places without knowing the document was in form a will, it having been represented to her by Mrs. Schultz as a letter from Bertha Dallman to a friend or relative. On inquiry by Mrs. Puljer as to why Bertha Dallman did not sign the paper herself, Mrs. Schultz stated that she was sick and unable to write. A short time thereafter Mrs. Puljer learned it was in form a will. After Fred Schultz had written the names of Zass and Hille as witnesses and Margaret Puljer had written the name of Bertha Dallman on the will, the defendant came to the Schultz home and took the document away with him and shortly thereafter deposited it with the register in probate in the county court of Milwaukee county. Bertha Dallman was not present when Mr. Schultz wrote the names and addresses of Zass and Hille on the document. Neither was she present when Mrs. Puljer wrote the name "Bertha Dallman" on the will. Bertha Dallman did not authorize Mrs. Puljer or

any one else to write her name on the document and she did not request the witnesses to sign or witness the instrument. She had no information that such a document was prepared or signed by any one. The defendant never spoke to Bertha Dallman and never saw her. At the time of the defendant's first visit to the Schultz home he was told by Mr. Schultz that Bertha Dallman wished to leave a legacy of $2,000 to Mae Schultz. When the defendant returned to the Schultz home that same evening with the will prepared by him it contained a provision providing a legacy of $3,000 to Mae Schultz. Mr. Schultz inquired why the sum inserted in the will was $3,000 instead of $2,000 and the defendant replied that the additional $1,000 was for his compensation and expenses. Later when the defendant returned to take the will away with him he was informed by Mr. Schultz that the latter had written the names of Zass and Hille as witnesses on the document. When the defendant was informed that Mr. Schultz had written the names of the witnesses himself he said: "You are sure they will be satisfied with that?" and Mr. Schultz replied: "Sure, they are friends of ours and that is all right." The defendant was named as executor in the will, and on January 23, 1928, he made and verified a petition praying that the document be proven and allowed as the will of Bertha Dallman, deceased. Objections were filed to the probate of the will. The matter came up for hearing on the 16th day of October, 1928. Before any testimony was offered, the defendant's attorney and also the contestant's attorney made rather extended statements to the court. From the statements so made the county court evidently concluded that an investigation was necessary. Before proceeding with the hearing the court notified the district attorney, the officers of the Milwaukee Bar Association and the Lawyers Club to be present. Representatives of the district attorney, of the Milwaukee Bar Association and the Lawyers Club appeared at the hearing, which then proceeded. The defendant being duly sworn to testify the truth, the

whole truth, and nothing but the truth, testified that the document purporting to be the will of Bertha Dallman was signed by a woman who was introduced to him as Bertha Dallman; that he obtained the information from which the will was prepared from that person through Margaret Puljer acting as interpreter. That the person so introduced to him as Bertha Dallman signed the will in his presence and in the presence of the witnesses, Hille and Zass, and that the said witnesses likewise signed the will in his presence. At the hearing in the county court Fred and Mae Schultz first falsely testified that the will was signed by Bertha Dallman and witnessed by Hille and Zass. The two alleged witnesses testified that they did not sign the will as witnesses or otherwise, and before the hearing in the county court was concluded, Fred and Mae Schultz both admitted that their testimony was false and that the will was not signed by Bertha Dallman or by Hille and Zass. After Fred and Mae Schultz admitted that the alleged will was spurious they were directed to go to the district attorney's office, and as they left the court room they were met by the defendant, who advised them to tell the same story in the district attorney's office that they had first testified to in the county court.

The will was denied probate. The defendant was arrested and charged with having committed perjury and of having sworn falsely. He was found guilty of having committed perjury and was sentenced to the house of correction of Milwaukee county for an indeterminate term of from two to five years, where he has since been confined.

During the trial of this disbarment action the defendant, after being duly sworn, testified that he obtained the information from which he prepared the will from Margaret Puljer, acting as interpreter for a woman introduced to him as Bertha Dallman; that the woman so introduced to him was Marie Kuhlnig; that the name "Bertha Dallman" was written on the will by Marie Kuhlnig and was witnessed by

Hille and Zass in his presence and in the presence of Margaret Puljer, Fred Schultz, and Mae Schultz. His testimony was contradicted by Margaret Puljer, Fred Schultz, Mae Schultz, Walter Zass, Leo Hille, and Marie Kuhlnig.

The referee found "that the defendant testified falsely and committed perjury on the hearing to probate the alleged will in the county court of Milwaukee county, and that he committed a fraud upon the court when he made and filed a petition to have the alleged will admitted to probate; that he knew that the same was a false, forged, and fraudulent document and undertook to sustain and have it admitted to probate by his own false and perjured testimony."

The referee recommends absolute revocation and annulment of the defendant's license to practice before the courts of this state.

No exceptions have been taken to the findings of the referee and no one appeared for the defendant at the time this matter was heard by this court. The record has been freely consulted and carefully considered. The findings of the referee are overwhelmingly sustained. This being true, the recommendations of the referee must be approved as a matter of inexorable duty. It clearly appears that the defendant knew that the alleged will was spurious and forged. He was clearly not present when the signatures "Bertha Dallman" were written on the document. He was not present when the signatures "Leo Hille and Walter Zass" were placed thereon. Yet, notwithstanding all this, and at a time when he knew that the document was being seriously questioned, and at a time when he knew that the county court of Milwaukee county was conducting a hearing in the nature of an investigation and that the whole proceeding was being watched by representatives of the district attorney's office, the Milwaukee Bar Association, and the Lawyers Club, he deliberately swore to a state of facts which he knew to be absolutely false.

It also appears that he was guilty of subornation of perjury in attempting to procure certain of the witnesses to corroborate his corrupt and wilful perjury. It further appears that when he presented the will for probate he knew it was false and perjured, yet, notwithstanding this knowledge, he verified the petition to the county court asking that it be admitted to probate; that when the hearing was had under circumstances well calculated to give pause even to one whose moral sense was dull, he brazenly persisted under oath in giving testimony which was known to him to be absolutely false. Even before the referee in this proceeding, he testified to a state of facts so plainly false as to mark him as one without moral character. Nothing in extenuation of such conduct on the part of a Wisconsin lawyer can be suggested.

The learned referee summarizes his conclusions as follows:

"The testimony in this case presents a well-nigh unparalleled state of facts. It establishes conclusively that the defendant, a licensed officer of the courts of this state, bound in conscience to assist honestly and honorably in the administration of justice, permitted himself to become involved in a conspiracy to perpetrate a fraud upon an old, infirm, and helpless woman. In an effort to consummate such fraudulent scheme, he undertook to deceive the court by committing perjury. He committed not only perjury, but the testimony shows that he is also guilty of subornation of perjury. The defendant insists that the alleged will was signed and witnessed in the presence of seven persons including himself. His claim has no support from any of the other six;—on the contrary, they all testified positively that it is not true.

"A license to engage in the practice of law may be properly regarded as a certificate of good moral character. The public may rightfully assume that when the State issues a license to engage in the practice of law, it impliedly certifies to the holder's moral fitness. A license to engage in this profession should not be revoked for trivial causes; but when, as here, the State is confronted with indisputable facts forcing the

conclusion that a lawyer does not possess the essential character qualifications to continue in the profession, his license should be promptly revoked."

After having given this matter rather unusual consideration because of the fact that the defendant was not represented by counsel in this court, we conclude that the findings and recommendations of the referee must be approved.

The defendant was not only willing to perpetrate a great fraud upon an old and helpless woman but was willing to cheat and defraud her beneficiaries under a former will. He also showed a shameful disposition in his attempt to put over a rank fraud upon the county court of Milwaukee county. Language seems weak indeed when we attempt to express our condemnation of such conduct. The defendant has shown himself wholly unfit to continue in the practice of the law. He is so clearly lacking in moral sense as to render his continuance in the profession of the law an abomination in the sight of both God and man.

In coming to these conclusions which imperatively demand the revocation of defendant's license and the striking of his name from the roll of attorneys, we experience a feeling of deep regret tinctured with sadness. We would greatly prefer never to have occasion to pass judgment upon defendants in proceedings of this kind. We earnestly hope and pray that the time may speedily come when all members of the Wisconsin bar, without exception, will be so deeply impressed with the great responsibilities of the profession, and so imbued with its high ideals, as to make proceedings of this nature forever of the past.

It is ordered and adjudged that the name of the defendant, George C. Stetson, be, and the same is hereby, stricken from the roll of attorneys of this court; and the license to practice law granted to him be, and the same is hereby, revoked; and he is ordered and required to desist from the practice of law in this State.